Davis, J.,
delivered tbe opinion of tbe court:
This motion, being made by a claimant, must, in order to be granted, be grounded on reasons which are good cause for a new trial by tbe rules of tbe common law or chancery in suits between individuals.
Tbe first cause assigned in tbe motion is, “ that by mistake and inadvertence tbe whole of tbe evidence applicable to tbe case was not submitted or brought to tbe attention of tbe court when tbe case was tried.” Neither tbe rules of common law nor those of chancery recognize such a cause as sufficient for granting a new trial as of right. To do so would tend to invite tbe bar to make empirical tests of’tbe views of tbe court upon tbe weak points of a. case before taking tbe trouble to prepare *196 it for trial. The court, however, is always willing, as matter of grace, to rectify mistakes, when it plainly appears that they are mistakes, into which it may have been led by the error or inadvertence of counsel, and it can do so without violating vested rights of the other party. It is due to the eminent jurist and counselor who tried this case at the bar, and who lias since deceased, to say that the counsel who put forward this cause in their motion are mistaken in supposing that the evidence to which they undoubtly refer was hot brought to the attention of the court at the trial.
The second cause set forth in the motion is, “ newly-discovered evidence since the trial of the case.” As no such evidence was presented on the argument of the motion, it is unnecessary to consider this point. Newly-discovered evidence is undoubtly good cause at common law for new trial within the limitations indicated in previous opinions of this court, and when the motion is made at the term at which the judgment is rendered.
The third assigned cause is, a change of circumstances a,nd the dismission of another case pending in this court in which a claim was made to a part of the cotton for which this suit has been brought and prosecuted since the time when this suit was tried.” A judgment rendered in a suit involving property which was the cause of action in a suit in which judgment had been already rendered is no cause for opening the prior judgment.
The fourth cause assigned is, “a mistake or error in the judgment of the court as to the amount to which the claimant is entitled to recover.” The counsel does not say whether the mistake is one of fact or of law.
At the common law it is good cause for setting aside a verdict that it is against evidence. In reviewing the action of the jury, the judge acts as a quasi-independent tribunal. But this court, acting on the law of a case, bears no relation to itself acting on the facts, which in the remotest degree resembles the relations between a jury and a judge at nisi grins.
In deciding a case we first act as judges, in order to determine what evidence shall be received and what rejected. Next, as jurors, we shape the facts into a form resembling a special verdict. The concessions which individual judges make or find themselves unable to make to reach a result are lost in this proceed *197 ing. The bar and the world only know that at least three members of the court concur in what is announced as a finding of fact, and have no right to know more unless information is voluntarily communicated.
Having shaped our facts as jurors, we are next required by the rules of the Supreme Court to apply the law to these facts.
In all this there is no resemblance to the action of an independent body of jurors receiving instructions from a judge and rendering a verdict which may or may not be in accordance with the evidence. The common-law remedy which in that case may be necessary in order to insure against a miscarriage of justice, in our case does violence to the good sense of the court, and tends to useless protraction of litigation.
In Miller v. Baker (20 Pick., 288, 289), Chief Justice Shaw, commenting on Massachusetts practice, says:
“It is obvious in every jury trial, of whatever nature, however complicated and balanced or simple and preponderating the evidence may be, there must be a losing party. It would of course follow that in every case there might be a motion for a new trial and a claim for a report to support it. Such a motion must of course go to the full court for argument. When it is considered how honestly and naturally every one engaged in a legal controversy is disposed to think favorably of his own cause, of his own chance of success if he can try bis case over again, it must be obvious to those who are practically acquainted with the subject to what a very large extent this would increase litigation. Probably the old system of reviews, giving a losing party a second chance in a jury trial as a matter of right, though formerly believed to be a great abuse as a very copious source of expense and vexatious delay, would have even less tendency than the rule insisted on to multiply trials, delay final decisions, and increase litigation.”
In connection with this apposite language of a distinguished judge, it is worthy of remark that the considerate mode of administering .justice in this court has approached the old system of reviews referred to by him. A large number of the cases tried at the last term were retrials, several of which were granted in order to enable claimants to supply defects of proof. The very case in which this motion is made has been twice before the court. The court is not disposed to discontinue this practice so *198 long as tbe state of tbe docket does not require it to impose upon claimants tbe stricter rules of practice wbicb prevail in other tribunals. And wliile we cannot admit that a claimant has right to demand a new trial for what he regards as a mistake in the findings of fact, the- court will always be ready to acknowledge an error when brought to its notice, and reserves to itself the fullest right to revise its own proceedings, so long as they are within its own control.
From the tenor of the argument of the senior counsel we apprehend that he imagines that our decision was made, n ot under a mistake of fact, but under a mistake of law. When such a mistake appears in the record, a party may take advantage of it on appeal, when the case is appealable; but when it does not appear in the record, his remedy lies in a motion for review.
In Pugh’s Case (99 U. S., 265), the Supreme Court says: When the rights of the parties depend upon circumstantial evidence alone, and there is doubt as to the legal effect of the facts, it is the duty of the court, when requested, to so frame its findings as to put the doubtful question in the record.” The claimant apparently thinks that had this opinion been announced before the entry of judgment in the present case, either the result would have been more favorable for him or this court would have placed hi the record some further facts which it regards as of doubtful legal effect, but which, if allowed, might turn to the claimant’s advantage.
We do not understand that the court in Pugh’s Case intended to vary or change the familiar rule that when a known and experienced connection ordinarily subsisting between collateral facts or circumstances and the resulting fact in controversy is satisfactorily proved, it forms a proper basis of evidence for the legal presumption of such resulting fact. (1 Greenl. on Ev., § 11.) On the other hand, it cannot be intended that when the separate links in the chain of evidence are not satisfactorily proved or fail to convince this court of the moral probability of the truth of the desired resulting fact, it is nevertheless required to embody, or would be justified in embodying, them in its findings in order to enable a litigant to argue in the court above the truth of a circumstance which we do not think to be true.
This court has often been obliged to apply this law of presumptions. In many cotton cases, when claimants have been unable *199 to establish by positive proof more than ownership of the property and its seizure by an authorized officer and its movement by ordinary channels toward a mass of intermingled cotton which, in its turn, is traced into the Treasury, the court has found as a fact the legal presumption that the claimant’s cotton formed part of the mass. In some cases it has found as facts the separate links in the chain, and deduced the conclusion as presumption of law.
The decision in .Pugh’s Case affirms the equity of this mode of reaching results. It does no injustice to the government, since it is more difficult to forge a,false chain of facts from which a resulting fact is to be deduced than it is to manufacture a single falsehood. It does the highest justice to claimants, because without it the beneficent legislation of Congress would have been useless to a large number of them.
The present claimant’s cotton was seized in two lots. One hundred and fifteen bales were, on the 30th or 31st July, 1865, taken by one Dustan, assuming to be a local Treasury agent. It was contended at the trial and is now contended that these bales formed part of a large mass of cotton returned as received at Mobile from Dustan, sent to New York or New Orleans, and sold there on government account. We have examined these returns with care, and find it demonstrated to a mathematical certainty that it could not have been so.
The second lot of twenty-seven bales was, on the 26th of August, 1865, taken by one Montague, also assuming to be a local agent, and was hauled to a neighboring railway-station. Two days afterwardMontaguewas relieved. Six hundred and ninety-three bales of cotton were found at the station awaiting shipment. Thirteen of these belonged to the claimant. For these he has obtained judgment. Of the remainder, fourteen bales, we can find no trace.
Here the claimant rested his examination of the proof and his contention, both at the trial .and on the hearing of this motion. He made no comment on the following further return from the Treasury: “On the 11th and 12th of September 647 bales were received, all of which were tfirned over to O. W. Dustan as his j one-fonrtli for collections.’”'
The minority of the court at ere of opinion, however, that the evidence in the record warranted the presumption that the'claim *200 ant’s one hundred and fifteen bales reached Mobile and formed part of this mass.
Had the majority been of the same opinion as to the force and credibility of the evidence, the court would not have hesitated to give judgment accordingly, although the claimant had not contended that his cotton formed part of this mass, but, after careful examination, they reached a contrary conclusion.
In all this the court exercised its right to weigh the force and credibility of evidence, and made no mistake of law; not appear-on the record, which entitles the claimant to a review.
It is proper to add that the record raises the gravest doubts as to the official status of Dustan and of Montague, and that the majority of the court are by no means prepared to concede that even had the proof established that the claimant’s cotton'reached Mobile and formed part of the mass delivered to Dustan, its proceeds could in any sense, either actually or constructively, be regarded as within the Treasury.
The court is united in the opinion that, for the reasons above given, the claimant’s motion must be denied.